**IN THE COURT OF APPEALS OF IOWA**

No. 20-0863
Filed October 7, 2020

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**C.M., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The father appeals the termination of his parental rights to his now five-year-old daughter. **AFFIRMED.**

Misty White, Sigourney, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Lynnette M. Lindgren of McCoy, Faulknet & Broerman, Oskaloosa, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The father appeals the termination of his parental rights to his daughter, M.M., born in 2014.[1] The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(f) and (*l*) (2019). The father asserts (1) the court erred in terminating his parental rights, (2) the State failed to make reasonable efforts to unify him with M.M., (3) he should have been allowed an additional six months with reasonable efforts afforded to show he could resume custody and care of M.M, and (4) it is not in the best interests of M.M. to terminate the father's parental rights because of their close bond. Our review of termination proceedings is de novo. *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

M.M. and her sister, J.M.,[2] were removed from the mother and father's home on August 3, 2018, pursuant to an ex parte removal order following allegations that the mother was using methamphetamine and failed to provide adequate medical care to J.M. On August 17, an allegation was made to the Iowa Department of Human Services (DHS) that both the mother and father were using and selling methamphetamine in the home in the presence of the children, which resulted in a founded child abuse report. This was not a new problem for the father as he had struggled with methamphetamine usage since his early teens. But, on August 21, M.M. and her older sister were adjudicated to be children in need of assistance as defined in Iowa Code section 232.2(6)(c), (e), and (n) (2018)

---

[1] The mother does not appeal the termination of her parental rights

[2] J.M. was age sixteen at the time of termination hearing and spoke on her own behalf at the hearing. The father does not appeal the termination of his rights to this child. At the time of removal, a brother was also removed from the parents' care, but he attained the age of majority and is not part of these proceedings.

because of the parents' substance-abuse issues and inability to properly care for the children. On October 16, the court ordered continued removal of the children from their parents' home. Prior to that order, M.M. was placed in the care of her cousin and continued to reside there throughout these proceedings. When M.M., then age four, arrived to her current placement, she was not potty-trained and had serious dental issues from years of not brushing her teeth.

The October 16 case permanency plan required both the mother and father to participate in substance-abuse and mental-health services and comply with drug testing before the child could return to their care. As a component of that plan, DHS noted the father was in counseling and started inpatient substance-abuse treatment in March 2019. He lasted three days of the twenty-eight day program before leaving. He again had an inpatient bed opportunity in May 2019, but he failed to even show up to start the program. He stopped the mental-health counseling even though he was diagnosed with bipolar disorder, borderline personality disorder, and intermittent explosive disorder. Yet, to his credit, he continued outpatient substance-abuse counseling through September 2019 and reported he discontinued methamphetamine use for part of the summer of 2019. By the father's own admission during the permanency hearing in August 2019, he used methamphetamine and marijuana in June 2019. However, he failed to report his relapse to his substance-abuse counselor. The father also took a drug test in July of 2019 that came back positive for methamphetamine and marijuana.

Over the sixteen months of DHS involvement with the father, he participated in some treatment and ceased using methamphetamine for a time, but he continuously used marijuana, resumed using methamphetamine, and stopped

participating in the mental-health and substance-abuse treatment required by the juvenile court. By the last day of the hearing on termination of rights in December 2019, the father alerted family and his Family Safety, Risk, and Permanency (FSRP) provider that he was homeless, had relapsed and had "thrown in the towel."[3]

As for the proceedings moving toward termination, the juvenile court heard evidence on the permanency question on August 6, 2019. Believing no significant progress had been made by the parents, that same month, the State petitioned for the termination of the parents' parental rights. The hearing on the termination of parental rights occurred over two trial days—September 4 and December 2, 2019. Without ever testifying, the father attended the first trial day and did not appear for the final trial day. The order terminating the father's rights was entered in June 2020. The father appeals that ruling.

"We use a three step analysis to review termination of parental rights." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we consider whether there is a ground for termination under section 232.116(1). *Id.* at 472–473. Once grounds for termination have been established, we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Lastly, we determine "whether any exceptions in 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

---

[3] In November 2019, the FSRP provider offered to take the father to the emergency room or a crisis unit, and after no response, she directed law enforcement to conduct a wellness check. The father admitted to the officer that he was using methamphetamine.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(f) and (*l*) (2019).[4] The State has the burden of proving the grounds for termination by clear and convincing evidence. *In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *3 (Iowa 2020). When the juvenile court relies on more than one statutory ground, we may affirm the termination order if we find clear and convincing evidence to support any ground. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The father does not directly challenge the underlying grounds for termination. Instead, he argues that DHS failed to make reasonable efforts to achieve reunification of parent and child. Alternatively, he contends that he should have been allowed an additional six months to show he could function effectively as M.M.'s parent.

"The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). To determine whether reasonable efforts have been made toward reunification, the court considers "[the] type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1). The father focuses his reasonable-efforts argument on

---

[4] Under paragraph (f), the State had to show that all of the following:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102. The father does not challenge these elements.

his perceived indifference of the DHS social worker and a lack of services provided by DHS. He points to the three motions for reasonable efforts filed by him in July 2019 to initiate visits with M.M. that had been terminated at the end of April. He has a point. Even his FSRP provider testified there was no reason to stop his weekly visits with M.M. Yet when the visits began again after the hearing on his motions, he often moved the visits, only attended six out of the twelve weeks, and completely stopped attending after he failed to show for the November 1 visit. He was offered services throughout these proceedings: supervised visitations, substance-abuse evaluation and treatment, residential treatment referral, mental-health services, drug testing, and safe care parenting curriculum.

While we find that the father did take advantage of some of the services offered to him and started making progress, he quickly backslid and never fully committed to making the changes necessary to facilitate reunification with M.M. There are many "what ifs" in this case. The father posits if he had reasonable efforts by the State in March 2019 we would not be here. And we can ask, what if he had actually completed the inpatient treatment in March 2019 instead of leaving after three days or what if he had utilized the open bed inpatient opportunity in May 2019 instead of no showing? But on our de novo review, as of the last hearing in December 2019, with a father missing in interest, there was no what if. Prior to the final permanency hearing on December 2, 2019, the father missed a scheduled drug test on October 28, 2019. Another test was scheduled for November 1, but he again did not show up. And the FRSP provider believed he had been using prior to his last attended visit with M.M. on November 1, 2019, based on his unkempt and disheveled appearance.

The three months between the start and end of the hearings on termination offered the father an opportunity to prove his commitment to treatment and fatherhood. But, the FRSP provider relayed the father's November 20 text messages stating that he planned to use methamphetamine. After directing the police to perform a wellness check, the father ceased all contact with the FRSP provider. In addition, the father's sister testified at the December 2 hearing that he sent her text messages on November 20 stating that he had dropped out of substance-abuse class. Based on this record, we find that the father had access to reasonable efforts directed by DHS, yet, when the father was provided access to those services to reunify with M.M., he failed to utilize the services offered to achieve the substance-free goal.

The father argues that an additional six months would have provided him time to work toward reunification with M.M. *See* Iowa Code §§ 232.104(2)(b), .117(5). Sadly, as noted earlier, the father had the three months between the September and December hearing dates in the termination hearing to show his commitment to change and, instead, he succumbed to the previous destructive lifestyle with substance abuse. In those three months, the father missed visits and, when he did attend, appeared under the influence of a drug. He then reported he was homeless. With this regression, we cannot see how an additional six months would allow the father to resume caring for M.M. The father has continuously tested positive for methamphetamine and marijuana, and he quit participating in any of the services necessary for reunification prior to the final termination hearing. He skipped drug tests, ceased attending substance-abuse class, and stopped communicating with the FRSP provider. Finally, the father also failed to appear

for the December 2, 2019 termination hearing. In sum, the father is not in a position to resume care of M.M., even if allowed an additional six months to work toward that goal. We find no error in the juvenile court's permanency order.

Because of their close bond, the father claims it is not in the best interest of M.M. to terminate his parental rights. *See id.* § 232.116(2). And the FRSP provider described that bond as "strong." For months, M.M. has been in the care of her cousin, and they have a strong bond. The child is safe, secure, and integrated into the cousin's home and has daily contact with her older sibling. Despite the bond between the father and M.M., it has now been over two years that M.M. has been out of the father's care. Considering M.M.'s long-term needs for a stable and safe household, permanency is in M.M.'s best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."); *see also In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) (concluding termination was appropriate under the best-interests analysis because "we cannot deprive a child of permanency after the State has proved a [statutory] ground for termination"). In our best-interest analysis, our focus is on furthering the long-term growth and development of M.M. Despite any existing bond, where the father prioritizes his use of methamphetamine and marijuana over his child, we find termination to be in the child's best interests.

We appreciate that the father loves M.M., desires to be a good father to her, and early on made some progress toward his battle with addiction. Still, as he confirmed with his actions between the hearing dates in the termination trial, he had not conquered those enemies and we cannot risk that M.M. likely would be a

casualty of that war.  For all of these reasons, we agree with the juvenile court that termination is in the child's best interests.

**AFFIRMED.**